JEFFER, MANGELS, BUTLER & MITCHELL LLP
AN NGUYEN RUDA (SBN 215453) (ahn@jmbm.com)
SEAN B. GIBBONS (SBN 263818) (sbg@jmbm.com)
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California  90067-4308
Telephone:     (310) 203-8080
Facsimile:     (310) 203-0567

Attorneys for Defendant Ghilotti Bros. Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE RAMIREZ, LUIS GOMEZ, and MARCK MENA ORTEGA on behalf of themselves and all other persons similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>GHILOTTI BROS, INC., a corporation; and DOES 1 through 50, inclusive,<br><br>　　　　Defendants. | CASE NO.    3:12-cv-04590<br><br>**DEFENDANT GHILOTTI BROS., INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION**<br><br>Judge: Hon. Charles R. Breyer<br>Date: March 29, 2013<br>Time: 10:00 A.M.<br>Crtrm: 6, 17th Floor |

PRINTED ON
RECYCLED PAPER

LA 9302402v1

OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION

Defendant Ghilotti Bros., Inc. ("GBI") hereby submits its Opposition to the Motion for Conditional Certification by Plaintiffs Jose Ramirez, Luis Gomez, and Marck Mena Ortega.

## I. INTRODUCTION:

Plaintiffs seek to certify a class of "all present and former employees of [GBI] who have worked at a construction site, yard, or loading area as a laborer... whose work included the loading and unloading of [GBI's] trucks and the transport of necessary construction equipment to and from job sites **prior to the start of their shifts and following the conclusion of their shifts.**"

The moving papers presume that conditional certification is a "rubber stamp." It's not. If Plaintiffs' theory is believed, there would be no need for a noticed motion, and no opposition would be permitted. Indeed, Plaintiffs must demonstrate, based on, "substantial allegations, supported by declarations or discovery, that 'the putative class members were together the victims of a single decision, policy, or plan.'" *Gerlach v. Wells Fargo & Co.* No. 05-0585, 2006 WL 824652, *2-3 (N.D. Cal. Mar. 28, 2006), *quoting Thiessen v. General Electrical Capital Corp.*, 267 F.3d 1095, 1102-1103 (10th Cir. 2001).

Here Plaintiffs have not met their burden. Plaintiffs have not shown a decision, policy, or plan by GBI to deprive them of their wages. To the contrary, Plaintiffs testified that they were properly paid, and that there existed multiple avenues to ensure that they received all their wages, of which they availed themselves regularly. Plaintiffs admit that there is no basis for their claims, or for conditional certification. Accordingly, GBI requests that the Court deny Plaintiffs' motion.

In the alternative, if the Court elects to grant the motion, the following conditions should be imposed:

1. The statute of limitations should be set at two years, because Plaintiffs have failed to demonstrate any willfulness by GBI; and
2. The Court should appoint a third-party administrator to preserve the privacy rights of the putative class members.
3. The proposed Notice to putative class members is prejudicial and should be amended.

/////

/////

## II. STATEMENT OF RELEVANT FACTS:

Ghilotti Bros., Inc. is a family-owned business founded in 1914 by Italian immigrants, which has grown into one of the preeminent contractors and corporate citizens in the Bay Area. GBI has grown from its inception as a one-man operation into a corporation that employs between 200 and 270 employees working in every aspect of the construction business. See Declaration of An Nguyen Ruda ("Ruda Decl.") ¶ 2, Exhibit "A;" Deposition of Michael Ghilotti ("M. Ghilotti Depo."), 17:3-23. GBI employs between 20 and 30 "foremen," who are in charge of particular job sites to which they may be assigned. Ruda Decl., ¶ 2, Exhibit "A;" M. Ghilotti Depo. 118:2- 119:3; 146:17-148:9. The foremen run the job sites, setting laborers' work hours and duties based on project needs. Ruda Decl., ¶ 2, Exhibit "A;" M. Ghilotti Depo. 145:2-17; 167:17-23.

Plaintiffs are unionized general laborers employed by GBI. All three named Plaintiffs have worked for GBI in numerous capacities for periods between seven and twelve years. Declaration of Jose Ramirez ("Ramirez Decl."), ¶2; Declaration of Luis Gomez ("Gomez Decl.") ¶2; Declaration of Marck Mena Ortega ("Ortega Decl.") ¶2. Under the Master Laborers' Agreement ("MLA") that covers their employment, employees work eight-hour shifts at various tasks and are compensated based on a union-negotiated scale that includes certain premiums. Declaration of Stephanie Taylor ("Taylor Decl."), ¶3, Exhibit "A."

### A. Multiple Policies Ensure Accurate Payment and Plaintiffs Used Them.

The MLA provides a grievance procedure for any wage/hour or payroll concerns. Declaration of Stephanie Taylor ("Taylor Decl."), ¶3, Exhibit "A," Pages 15-16. It further mandates that GBI establish and maintain a means for recording employees' reporting time and quitting time. Taylor Decl., ¶3, Exhibit "A," Pages 13-14. For public projects under contract to the State of California, GBI submits reports at prescribed intervals. Taylor Decl., ¶4. The union may regularly audit GBI's payroll and timekeeping practices, as permitted by the MLA. Taylor Decl., ¶3, Exhibit "A," Pages. 13-14.

Additionally, GBI, itself, provides its employees, including the laborers at issue here, a mechanism to claim unpaid wages. Taylor Decl, ¶5, Exhibit "B." Each week, GBI employees receive a copy of all hours worked to ensure that they are accurately paid, which report includes a

"Payroll Discrepancy Report". If they find an error, they may note and submit it for payment. Taylor Decl., ¶5, Exhibit "B."

Each named Plaintiff testified that he submitted claims under GBI's Payroll Discrepancy System and was subsequently paid any unpaid wages. For example, Ramirez testified that he is aware of the Payroll Discrepancy system and utilized it:

> Q. Do you know what a payroll discrepancy form is?
> A. Yes.
> Q. Did you ever submit- and these paid discrepancy forms you've heard us discuss it in other depositions, correct?
> A. Yes.
> Q. And these forms, they're received with your paycheck each week, correct?
> A. Yes.
> Q. Do you know what the purpose of the form is?
> A. Yes, because it happens sometimes where they did not put down all the days that had been worked.
> Q. And so the purpose of the form was for you to let the company know that there was something short about your paycheck, yes?
> A. Yes.

(Ruda Decl., ¶3, Exhibit "B;" Transcript of Deposition of Jose Ramirez ("Ramirez Depo."), 37:15-38:6).

Ortega confirmed that he has always been paid additional hours that he submitted through GBI's Payroll Discrepancy System (Ruda Decl., ¶4, Exhibit "C;" Deposition of Marck Mena Ortega ("Ortega Depo."), 138:1-7). Gomez testified: **"Frank [Palagi] would say if you worked, you're going to get your money.** And that's where he would check and call the foreman and that's when I heard the conversation that the foreman would be in agreement that I worked that time. And then he would sign and give it to the payroll lady." Ruda Decl., ¶5, Exhibit "D;" Deposition of Luis Gomez ("Gomez Depo."), 98:1-8. In fact, Plaintiff Ramirez submitted a Payroll Discrepancy form in order to be paid for travel time. See Exhibit "A" to Declaration of Stephanie Taylor.

Therefore, Plaintiffs' own testimony and the documents on which they rely, show that they cannot conditionally certify a class because they cannot demonstrate the existence of a "single decision, policy, or plan" that applied to all of them, or, for that matter, to any of them. GBI mandated an arrival time at a job site, nothing more. Any ancillary tasks performed on the way to or from that job site was performed on compensable time, and any time a GBI employee believed

/////

that he was not properly compensated, he could (and often did) submit a Payroll Discrepancy Form; there is no testimony by any Plaintiff demonstrating that such forms did not result in payment.

### B. There Is No Pattern or Practice on the Part of GBI Because Individual Foreman Set the Standards for Each Jobsite.

The size and complexity of GBI's operations require GBI to instill a great deal of autonomy in its foremen. M. Ghilotti Depo., 145:2-17; 167:17-23. GBI assigns laborers to a worksite and informs them of their start time (See Declarations of Ramirez, ¶6; Lepe, ¶6, Lessard, ¶6, Dent, ¶10). GBI employs between twenty and thirty foremen at any given time, and each foreman has the authority to deploy his crew as he sees fit and to establish such rules and practices as are necessary at each job site in order to accomplish the crew's objectives quickly and efficiently. M. Ghilotti Depo., 145:2-17; 167:17-23. No two job sites are alike, and no job description or set of rules universally applies to any laborer's experience from one job site or one foreman to the next. M. Ghilotti Depo., 145:2-17; 167:17-23. The MLA, the auditing system, and the Payroll Discrepancy system ensure that, despite these circumstances, employees are paid appropriately at all times.

### C. Plaintiffs were Paid for Travel Time.

As set forth above, each job site is different, both in duties and location, and each foreman has a different manner of running the site. M. Ghilotti Depo., 145:2-17; 167:17-23. Some foremen pay employees for doing for time spent traveling to and from jobsites in GBI vehicles, as evidenced by Plaintiff Ramirez's admission that he has been paid for travel time:

> THE WITNESS: When I left [the job site] he had suggested he'll pay me 10 hours, and I replied it was for him to pay me whatever he wanted to pay me. And on that day, Bulmaro, he brought in another truck, and he told me that he wasn't paid for the four hours.
> MS. RUDA: Q. But you were paid, correct?
> THE WITNESS: When I left [the job site] we agreed on 10 hours, he had said. I didn't accept that. I left the truck at the yard in San Rafael. When I was going home in my car on the Richmond Bridge, he called me and told me, I'm going to pay you for the four hours, because we have worked together before, and he wanted to pay me the four hours.
> MS. RUDA: Q. For your- for the time because it took you two hours to drive up and two hours to drive down, correct?
> A. Yes.
> (Ruda Decl., ¶3, Exhibit "B;",Ramirez Depo., 112:22-113:14)

Foremen may allow employees to leave early or arrive late so that employees can travel to and from the yard at issue. For example, Plaintiff Ortega testified that he was permitted to leave early in order to travel:

> Q. From 2008 to 2011, did any supervisor ever let you leave a job site early to return a truck so that you could be back at the yard by 3:30?
> THE WITNESS. At times.
> MS. RUDA: Q. Can you tell me how many times?
> A. Not many.
> Q. More than five times?
> A. From five to ten times.
> Q. Okay.
> A. That's what I remember.
> Q. Okay. So from 2008 to 2011, can you recall times when a foreman has let you leave a job site early because you picked up a truck in the morning?
> MS RUDA: Q. The last question was because you were returning a truck. This question is because you picked up a truck.
> A. What was the question?
> Q. So the question is: between 2008 to the present, has any foreman let you leave the job site early because you had picked up a truck in the morning from the- from the yard?
> THE WITNESS: At times, yes.
> MS. RUDA: Q. Can you give me an estimate of how many times?
> A. I have been allowed to leave early to go to the yard?
> Q. Yes.
> A. Not many, but some ten times, more or less.
> (Ruda Decl., ¶4, Exhibit "C;" Ortega Depo., at 132:1-133:7)

### III. PLAINTIFFS CANNOT MEET THEIR BURDEN FOR CONDITIONAL CERTIFICATION.

#### A. Conditional Certification is Not a "Rubber Stamp."

While the standard for conditional certification is relaxed, Plaintiffs must still demonstrate, based on "substantial allegations, supported by declarations or discovery, that 'the putative class members were together the victims of a single decision, policy, or plan.'" *Gerlach v. Wells Fargo & Co.* No. 05-0585, 2006 WL 824652, *2-3 (N.D. Cal. Mar. 28, 2006), *quoting Thiessen v. General Electrical Capital Corp.*, 267 F.3d 1095, 1102-1103 (10th Cir. 2001). This is Plaintiffs' burden to carry. *Id.* Plaintiffs "must show that there is some factual basis beyond the mere averments in their complaint for the class allegations." *Adams v. Inter-Con Sec. Systems, Inc.* 242 F.R.D. 530, 536 (N.D. Cal. 2007).

The determination of whether employees are "similarly situated" is fact-specific. *Wynn v. NBC*, 234 F.Supp. 2d 1067, 1082 (C.D. Cal. 2002). Courts review several factors, including (1)

1  whether there is evidence that the alleged activity was part of an institution-wide practice; (2) the
2  extent of similarities among the members of the proposed collective action, in particular whether the
3  potential members are all challenging the same employment practice; and (3) the extent to which
4  members of the proposed action will rely on common evidence. *Hyman v. First Union Corp.*, 982
5  F.Supp. 1, 3-5 (D.D.C. 1997).

### B.  Plaintiffs' Own Testimony Demonstrates Their Inability to Certify This Action.

Plaintiffs allege that Defendants' declarations "need not" be considered on this Motion. Plaintiffs seek to convince the Court that it is only their testimony that matters at the initial stage of certification. Regardless of whether this is so, it is Plaintiffs' own testimony that establishes their inability to certify this collective action. As set forth above, each named Plaintiff testified that they were aware of, and used, the Payroll Discrepancy Forms. Plaintiffs further testified that they were paid for travel time. Finally, none of the Plaintiffs' Declarations identify any agent of GBI as having given them an order to work without pay. In fact, Gomez testified clearly that "**Frank [Palagi] would say if you worked, you're going to get your money.**" Ruda Decl., ¶5, Exhibit "D;" Gomez Depo., 98:1-8.

### C.  Plaintiffs Cannot Demonstrate an "Institution-Wide Practice."

Plaintiffs also fail to establish an "institution-wide practice." Plaintiffs rely on *Luque v. AT&T Corp.*, 2010 U.S. Dist. LEXIS 126545, at *2. However, *Luque* was a "misclassification" case, in which the Court granted certification based on a uniform classification practice. *Id.* at *6. In *Luque*, the plaintiffs specifically identified AT&T's "best practice" policy and "duty shift" policy, each of which applied uniformly to each of them. *Id. at* *2, *6.

Here, no such policy exists. Plaintiffs have not identified any policy, any documents, or any practice by GBI. They have testified only that GBI ordered them to report to their job site at a specific time. They then ask the Court to infer, based on the autonomy of their foremen, the existence of a company-wide policy or practice despite their testimony that there are four policies, as set forth above, that ensure that Plaintiffs are accurately paid for the hours that they work.

Next, Plaintiffs point to the existence of a "driving bonus" as evidence of a company-wide policy to deprive them of pay. They claim that, because GBI at one point issued "bonus payments"

for time spent traveling to and from job sites, this somehow indicates that such time was otherwise unpaid. However, this ignores uncontroverted testimony that the "driving bonus" in fact resulted in a windfall to certain drivers, because GBI's foremen were already compensating employees for that time. Ruda Decl., ¶2, Exhibit "A;" M. Ghilotti Depo., 190:20-193:14.

Also, Plaintiffs' reliance on *Escobar v. Whiteside Construction*, No. C-08-01120 WHA, 2008 U.S. Dist. LEXIS 68439 (N.D. Cal. Aug 21, 2008) is not well-taken. In *Escobar*, the plaintiffs demonstrated that they were <u>required</u> to report to work one hour before being given an assignment. They then waited at the employer's premises, to be assigned to work, but were not paid for this time., *Id. at* 10-11. In *Escobar*, the plaintiffs claimed entitlement to pay for travel time based on the same class-wide nucleus of fact: that is, that they were first required to report to their employer's premises one hour before they started, in order to receive that assignment, after which they traveled from the premises to the worksite. *Id. at* *2. Thus, the *Escobar* plaintiffs were able to demonstrate a company-wide policy and practice of nonpayment.

Here, that is not the case. Plaintiffs' testimony demonstrates that the GBI dispatch system informs them of their assignment and starting time the night before; they receive their work assignment and are given a specific time at which they are to report and begin work. (See Declarations of Ramirez, ¶6; Lepe, ¶6, Lessard, ¶6, Dent, ¶10). Plaintiffs are not necessarily required to report to the yard. Furthermore, the named Plaintiffs' testimony demonstrates that various foremen had differing practices for compensating this time, including permitting some workers (such as Ortega) to leave early, or compensating other workers (such as Ramirez) for travel time, as set forth above.

Plaintiffs' remaining cases similarly do not support certification. In each and every case citied by Plaintiffs, there was a discernible pattern or practice of nonpayment. *Carrillo v. Schneider Logistics* 11-8557 CAS, 2012 U.S. Dist. LEXIS 26927 (preliminary injunction to stop the planned termination of an entire department); *Belcher v. Shoney's, Inc.* 927 F.Supp. 249, 253 (M.D. Tenn. 1996) (plaintiffs were all members of employer's specific "fluctuating-pay" program); *Clarke v. Convergys Customer Management Group*, 370 F.Supp.2d 601 (S.D. Texas 2005) (specific corporate policy and physical setup which made it impossible for plaintiffs to clock in without first

performing work tasks); *Thiebes v. Wal-Mart Stores,* No. 98-802 KI, 1999 U.S. Dist. LEXIS 18649, (plaintiffs were subject to a policy that required them to complete tasks before they left work). Here, there are no such policies to which Plaintiffs can point. In fact, as set forth above, there are four distinct policies that assure exactly the opposite effect, that is, that <u>if Plaintiffs worked, they would get their money.</u>

Finally, *White v. Osmose, Inc.,* 204 F.Supp.2d 1309 does nothing to assist Plaintiffs, in fact, it supports Defendants. In *White,* the Court reduced the proposed class to one category in one region, and further curtailed the class to those supervised by one individual who was identified to have made particular representations on behalf of the defendant company. The Court declined to certify the plaintiff's proposed class because, as here, the attendant testimony and exhibits directly contradicted the plaintiff's assertion of a company-wide policy, practice, or procedure, finding at best that the plaintiff had received questionable orders from one supervisor. *Id. at* 1316-1318.

### D. "Off-the-Clock" Claims Are Inherently Unsuitable for Certification.

Notwithstanding the fact that Plaintiffs have not made any showing that demonstrates their suitability for conditional certification, the fact of the matter is that claims such as theirs are not proper for collective action. Case law recognizes that off-the-clock claims are inherently individualized. *Lawrence v. City of Philadelphia* (E.D.Pa. 2004) 2004 WL 945139 at *2 ("individual claims potentially vary too widely to conclude that in regard to their off-the-clock claim, the Plaintiffs are similarly situated."); *Basco v. Wal-Mart Stores, Inc.* (E.D.La. 2004) 2004 WL 1497709, at *8 (off-the-clock claims will require "highly individualized evidence concerning each associate" including whether any off-the-clock work occurred, whether the managers and supervisors knew about the off-the-clock work, whether the employee failed to report the time, and, if so, why the employee failed to report the time); *Diaz v. Electronic Boutique of America, Inc.* (W.D.N.Y.2005) 2005 WL 265270, at *5 (off-the-clock claims require an examination by the Court of when plaintiff was scheduled to work, when he actually worked, whether he was paid for the time worked and whether plaintiff's timesheets were altered to delete actual time worked, and then the Court would have to conclude the same inquiry as to each other class member).

Plaintiffs' testimony demonstrates the individualized nature of their off-the clock claims.

1  Ramirez admits that he asked his foreman to be paid for his travel time and that his request was
2  granted. Ruda Decl., ¶3, Exhibit "B;" Ramirez Depo., at 112:22-113:14. Ortega admits that he was
3  allowed to leave a jobsite early multiple times in order to travel back to the yard. Ruda Decl., ¶4,
4  Exhibit "C;" Ortega Depo., at 132:1-133:7. Given the differences between foremen and job sites,
5  Plaintiffs' claims are so individualized as to defy collective adjudication. Conditional certification
6  should not be granted.

### IV. EVEN IF COLLECTIVE ACTION IS CERTIFIED, MULTIPLE ISSUES REMAIN.

Plaintiffs' action, even if certified, is improper as proposed. Should the Court decide to certify the action, it should impose the following conditions: first, that the statute of limitations be fixed at two years; and second, that notice to potential Plaintiffs be provided by a third-party administrator.

#### A. Any Action By GBI Was Not Willful; A Two-Year Statute of Limitations is Appropriate.

The Portal-to-Portal Act of 1947 provides that an action under the FLSA "shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. Sec. 255(a). Plaintiffs request that the Court apply the three-year statute despite having adduced no evidence that GBI's actions were willful.

Under the standards set forth by the United States Supreme Court, a violation is not willful unless the employer knows or shows a reckless disregard for the matter of whether its conduct is prohibited by the FLSA. For example, a violation should not be found willful if it is based on nothing more than an employer's negligence or its good faith (but incorrect) assumption that its pay system fully complies with the FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 100 L.Ed.2d 115 at 123-124, 108 S.Ct.1677 (1988). Even an employer which "should have done more to ameliorate the problem, [but] did at least attempt to address it, albeit ineffectively" is held to a two-year statute of limitations on FLSA claims. *Reich v. Dep't of Conservation and Natural Resources*, 28 F.3d 1076 (11th Cir. 1994).

Plaintiffs have not met their burden. They have presented no evidence that demonstrates any "willfulness" on the part of GBI. In fact, all the evidence presented by either party demonstrates that GBI followed the terms of the collective bargaining agreement and had three distinct policies in place to ensure that its employees were properly paid, and followed each of them to the letter. GBI has far exceeded the good-faith standard. The Court should enforce a two-year statute of limitations on Plaintiffs' claims.

### B. If a Collective Action Is Certified, a Neutral Third Party Administrator Should Provide Notice.

A third-party administrator is necessary to protect the privacy interests of those potential class members who do not wish to "opt in." Plaintiffs seek the names, addresses, telephone numbers, and e-mail addresses of potential Plaintiffs from 2009 to the present. See Plaintiffs' Proposed Order, Page 3, Lines 27-28; Page 4, Lines 1-3. Email addresses and phone numbers may not be as sensitive as social security numbers, but their release also carries privacy concerns and that information is not crucial to providing notification. *Blakes v. Illinois Bell Telephone Co.*, No. 11 CV 336, 2011 WL 2446598 at *7 (N.D.Ill., June 15, 2011), Using a third party is the best way to ensure the neutrality and integrity of the opt-in process. *Prentice v. Fund for Public Research, Inc.*, No. C-06-7776 SC, 2007 WL 2729187 at *5 (N.D.Cal. September 18, 2007). This is especially true as this is an "opt-in" class, where only those who return postcards are part of the class. Those uninterested should not have to give up their privacy right to their contact information.

Furthermore, the expense to the parties will be minimal. Given such a limited number of potential plaintiffs and the minimal geographic area at issue, GBI has received an estimate that such an undertaking would cost approximately two thousand dollars ($2,000.00). Ruda Decl., ¶6, Exhibit "E." Accordingly, the retention of a third-party administrator with experience in such matters should be retained in order to ensure only such contact as is necessary to ensure that those individuals who wish to "opt in" may do so, and those who do not are not further troubled by it.

In matters such as these, courts have approved the use of third-party administrators to issue notice. *See Robinson v. Empire Equity Group, Inc.*, No. WDQ–09–1603, 2009 WL 4018560 at *5; (D.Md. Nov. 18, 2009) *see also Montoya v. Contractors, Inc.*, No. CCB–07–455, 2008 WL 554114,

at *4 (D.Md. Feb.26, 2008); *Wren v. RGIS Inventory Specialists,* No. C-06-05778 JCS, 2007 WL 4532218 at *9 (N.D.Cal. Dec. 19, 2007) Accordingly, given the privacy issues at stake and the sensitive nature of the information requested, in addition to the low cost of the service, GBI asks that the Court require that the parties to utilize a third-party administrator to run the opt-in procedure.

### C. The Notice is Prejudicial and Should be Amended.

The Notice proposed by Plaintiffs, as written, gives an improper impression that more individuals are covered than may be, and moreover presents an inference that Plaintiffs' contentions have merit or are endorsed by the Court. Accordingly, the Court should amend the proposed Notice as follows:

First, the "TO:" line is unnecessarily inclusive and, by its language, implies that any individual who was employed by GBI is contemplated by Plaintiffs' Complaint. Furthermore, Plaintiffs have demonstrated above that Plaintiffs cannot establish a three-year statute of limitations with regard to their allegations. Accordingly, the "TO:" line should read, "Individuals employed as Laborers by Ghilotti Bros., Inc. from June 2010 to the present."

Furthermore, the paragraphs occupying Lines 6 through 12 contain language that implies merit, rather than dispute. GBI requests that the Court make the following amendments:

- substitute "alleging" for "involving" on Line 7.5;
- substitute "did not pay" for "unlawfully failed to pay" on Line 9.5;
- substitute "disputes these claims" for "contests all claims that have been asserted" on Lines 10.5 and 11.5;
- eliminate the word "such" on Line 11.5; and
- substitute "2010" for "2009" on Line 12.5.

GBI believes that a ninety-day notice period is excessive, given the small number of potential plaintiffs at issue. Courts have held that a 60-day period is a reasonable span of time to give potential plaintiffs sufficient notice of this lawsuit. See *Nehmelman v. Penn Nat'l Gaming, Inc.,* 822 F.Supp.2d 745, 765 (N.D.Ill.2011) (concluding 60-day period was reasonable given "relatively small number of potential class members"); *Smallwood v. Illinois Bell Tel. Co.,* 710

F.Supp.2d 746, 753 (N.D.Ill.2010) (noting 60–day opt-in period "provide[d] ample opportunity for prospective class members to opt-in"); *Shiner v. Select Comfort Corp.*, No. 09 C 2630, 2009 WL 4884166, at *5 (N.D.Ill.Dec.9, 2009) (allowing for 60–day opt-in period).

Similarly, GBI disputes the need for the phrase on Page 1, Lines 27-28, "Without sending the 'Consent to Join' form, you are not automatically a party to this Lawsuit" as superfluous and inappropriate. GBI requests that the Court delete it from the Notice.

With regard to "Section IV," on Page 2, Lines 13-15, GBI again notes that the language presumes merit and an outcome favorable to Plaintiffs. In order to maintain the neutrality of the notice, GBI requests that the Court amend the Section to read as follows: "If you choose not to join the collective action, you will not be affected by its outcome regarding the claims under the Fair Labor Standards Act in this case. You will be free to file your own lawsuit. Do not complete or mail the 'Consent to Join' form if you do not wish to join this Lawsuit."

Finally, the repetition of the contact information of Plaintiffs' counsel and the fact that such information occupies nearly one-quarter of each page is potentially prejudicial to GBI. Furthermore, the admonition that the Court is not to be contacted is rendered an afterthought by the size of the repeated information. GBI requests that the second instance of Plaintiffs' counsel's contact information be replaced with a more prominent admonition that the Court is not to be contacted.

### D. The "Consent to Join" Form Should Be Amended.

As set forth above, the necessary amendments to the Notice require revision to the "Consent to Join" form. As a preliminary matter, the Form should note the sixty-day deadline for return.

With regard to the paragraph occupying lines 5 and 6, GBI requests that it be amended to read "I worked for Defendant Ghilotti Bros., Inc. in California from (month/year) _____ to (month/year or present) _____ in the position of Laborer."

/////

/////

/////

/////

As to the paragraph occupying Lines 8-10, GBI requests that it be amended to read "I was not paid for time I spent: 1) loading company trucks and/or driving to job sites prior to the start of scheduled shifts, and/or 2) driving back from job sites and/or unloading the trucks at the end of scheduled shifts. I spent at least one hour engaged in the tasks listed above, for which I was not paid."

Finally, in order to ensure accuracy of records, GBI requests that putative Plaintiffs in this action be required to provide the last four digits of their Social Security number in a line to be added above their signature.

## V. CONCLUSION:

Plaintiffs cannot meet the burden to demonstrate that GBI had a policy or practice to deprive them of pay. Accordingly, the Motion for Conditional Certification should be denied. If the Court does grant the Motion, it should set a two-year statute of limitations, require a third-party administrator to protect the privacy of the potential class, and amend the class notice as proposed above.

DATED: February 26, 2013

JEFFER, MANGELS, BUTLER & MITCHELL LLP
AN NGUYEN RUDA
SEAN B. GIBBONS

By: _____
AN NGUYEN RUDA
Attorneys for Defendant GHILOTTI BROS., INC.