1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9        FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  JOSE RAMIREZ ET AL.,                        No. C 12-04590 CRB

12           Plaintiffs,                        **ORDER GRANTING MOTION FOR
                                                CONDITIONAL CERTIFICATION,**
13      v.                                      **DENYING MOTION TO DISMISS,
                                                AND GRANTING MOTION TO**
14  GHILOTTI BROS. INC. ET AL.,                 **STRIKE**

15           Defendants.
                                             /
16

17       This is a Fair Labor Standards Act (FLSA) case.  Plaintiffs allege that Defendant

18  Ghilotti Bros., Inc. ("Ghilotti"), a construction company, failed to provide proper meal and

19  rest periods, failed to provide accurate wage statements, and did not pay overtime and

20  minimum wages owed on account of uncompensated work it required its employees to

21  perform.  Plaintiffs focus on Ghilotti's practice of not paying its "driving laborers" for time

22  spent at the beginning and the end of their shifts loading and unloading Ghilotti trucks and

23  driving between Ghilotti loading areas and job sites.  According to Plaintiffs, those

24  uncompensated tasks usually took between and 2 and 3 hours each day.

25       Three motions are pending: (1) Plaintiffs' motion for conditional collective action

26  certification, (2) Ghilotti's motion to dismiss, and (3) Plaintiffs' motion to strike Ghilotti's

27  affirmative defenses.  The Court finds these matters suitable for disposition without oral

28  argument, see Civil Local Rule 7-1(b), and VACATES the hearings set for April 26, 2013.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

## I.     BACKGROUND

Plaintiffs Jose Ramirez, Luis Gomez, Marck Mena Ortega, and the ("at least 100 more" potential[1]) opt-in Plaintiffs are present and former Ghilotti laborers whose work included loading and unloading trucks and the transportation of necessary construction equipment to and from job sites before and after their shifts.  See Sec. Am. Compl. ¶ 41 ("Loading and Transport Subclass[2]").

According to declarations and documents Plaintiffs submitted in connection with this motion, Ghilotti requires that materials and equipment be transported between its job sites and its loading areas at the beginning and end of work days.  To that end, Ghilotti maintains a list of laborers with driver's licenses who may drive Ghilotti company trucks.  Ortega Decl. (dkt. 33-2) ¶ 3.[3]  Ghilotti laborers call the Ghilotti dispatch center the afternoon or evening before a potential work day, and a prerecorded message tells them (1) if they are working, and, if so, (2) at which site, (3) when they have to arrive at the site, (4) whether they must drive a company truck, and, if so, (5) which truck and (5) which equipment must be transported on that truck.  Id. ¶ 6.

A laborer assigned to drive a company truck must determine himself what time to show up at the Ghilotti loading area, which involves working backwards from the shift start time specified by dispatch and estimating loading and driving time from the loading area.  Id. Once at the loading area–often a company yard in San Rafael–the laborer must inspect the truck, fill it with oil and gas, collect and load the dispatch-specified materials into it, and then drive to the job site.  Id. ¶ 7.  That process usually takes between 1 and 1.5 hours.  Id.

---

[1]See Cert. Mot. at 11.

[2]Formally defined in the Second Amended Complaint as: "All present and former non-exempt employees of Defendants who have worked at a construction site, yard, or loading areas as a laborer at any time from four years prior to the filing of this action, until the resolution of this action, whose work included the loading and unloading of Defendants' trucks and the transport of necessary construction equipment to and from job sites prior to the start of their shifts and following the conclusion of their shifts."  SAC ¶ 41.

[3]While the Court cites only one declaration for each of the factual propositions here, Plaintiffs submitted seven largely-overlapping declarations describing the relevant facts.  See, e.g., Ramirez Decl. (dkt. 33-3); Gomez Decl. (dkt. 33-4); Lepe Decl. (dkt. 33-5); Lessard Decl. (dkt. 33-6); Dent Decl. (dkt. 33-7); Hodgkinson Decl. (dkt. 33-8).

United States District Court
For the Northern District of California

1    At the end of the shift at the work site, the driving laborer must collect the materials

2 he transported to the job site and load them back on to the company truck (sometimes with

3 the assistance of non-driving laborers), and then drive the truck back to the Ghilotti loading

4 area and unload the materials.  The post-shift loading and transportation process usually

5 takes between 1 and 1.5 hours.  Id. ¶ 9.

6    According to Plaintiffs, Ghilotti does not pay driving laborers for any of those pre-

7 and post-shift loading and transport duties.  Id. ¶ 11.  Rather, their pay stubs reflect only the

8 hours spent working at the job site "during [their] official shift[s]."  Id.  Plaintiffs also say

9 that their experiences of not being paid for driving and loading time did not vary by

10 supervisor.  Id. ¶ 12.

11    In 2007, Ghilotti briefly decided to provide some compensation to driving laborers for

12 their driving-related tasks through a "monthly driving bonus,"  Ramirez Decl. (dkt. 33-3)

13 ¶ 13 & Ex. A (Ghilotti memo titled "New Driving allowance procedure-sign-out for trucks"),

14 which was a separate check.  Ortega Depo., Grunfeld Decl., Ex. D at 138:22-139:15.  The

15 practice ended after "a few months."  Id. ¶ 13.[4]  It was not replaced with any other system of

16 compensating drivers for the loading and driving time.  Id.

17    And, according to one plaintiff, Ghilotti retaliated against him by denying him future

18 shifts when he complained about not being paid for time spent driving and loading.  See

19 Hodgkinson Decl. ¶12 ("When I would bring it up, inevitably I was told that I was on a 'no

20 work schedule' when I next called dispatch. . . . I once asked . . . why I had not been

21 scheduled to work[, and was told] that when I was ready to start driving trucks again without

22 a problem, I would be put back on a work schedule."); see also Gomez Decl. ¶¶ 12-13

23 (supervisor threatened to deny future shifts).

24    Plaintiffs filed suit in state court in June 2012 under state and federal wage and hour

25 statutes.  See dkt. 1, Ex. A.  After Plaintiffs filed an amended complaint in July, Ghilotti

26

27    [4]Ghilotti President Mike Ghilotti said in a deposition that the program was terminated because it was redundant, see Ghilotti Depo., Grunfelt Decl. (dkt. 33-1), Ex. A, at 179; as will be discussed

28 below, Ghilotti's position is that it already had mechanisms to compensate workers for driving and loading time.

United States District Court
For the Northern District of California

1   removed the case to federal court in August 2012 on the basis of federal subject matter

2   jurisdiction. Id. Ghilotti filed its Answer in September 2012, dkt. 12, and this Court granted

3   Plaintiffs' motion for leave to amend their complaint to add new claims in January 2013. See

4   dkts. 25, 27. So far, partial depositions have been taken of the three named plaintiffs and

5   Ghilotti's "person most knowledgeable" about the company's dispatch and record-keeping

6   practices. See Cert. Mot. at 4.

7       Now before the Court are three motions: (1) Plaintiffs' motion for conditional

8   collective action certification under the FLSA; (2) Ghilotti's motion to dismiss; and (3)

9   Plaintiffs' motion to strike Ghilotti's affirmative defenses.

10  **II.     LEGAL STANDARDS**

11      **A.      Collective Action Certification**

12      Under the FLSA, individuals may bring suit "in behalf of himself or themselves and

13  other employees similarly situated." 29 U.S.C. § 216(b). The statute does not define

14  "similarly situated," however, and neither has the Ninth Circuit. See Lewis v. Wells Fargo &

15  Co., 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009) (Wilken, J.). Within this Circuit, to

16  determine whether plaintiffs are similarly situated, courts take a two-step approach. Id.

17      First, the court makes an initial, conditional determination of whether plaintiffs are

18  similarly situated, "deciding whether a collective action should be certified for the purpose of

19  sending notice to potential class members." Id. The initial notice stage determination uses a

20  "lenient [standard] that typically results in certification." Id. (citing Wynn v. National

21  Broadcasting Co., Inc., 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002)). Plaintiffs must simply

22  provide "substantial allegations, supported by declarations or discovery." Kress v.

23  PriceWaterhouseCoopers, LLP, 263 F.R.D. 623, 627 (E.D. Cal. 2009). And, courts need not

24  even consider evidence provided by defendants at this stage. Id. at 628 (citing Lewis, 669 F.

25  Supp. 2d at 1128).

26      Then, once discovery is complete, and usually prompted by a defendant's motion for

27  decertification, the court makes a second determination, using a stricter standard. Id. At that

28  point, the court "must make a factual determination" as to the "propriety and scope of the

United States District Court

For the Northern District of California

1    class," considering "(1) the disparate factual and employment settings of the individual

2    plaintiffs; (2) the various defenses available to the defendants with respect to the individual

3    plaintiffs; and (3) fairness and procedural considerations." Leuthold v. Destination America,

4    Inc., 224 F.R.D. 462, 467 (N.D. Cal. 2004) (Walker, J.).

5        Even at that second stage, the showing that must be made for collective actions is less

6    stringent than what is required under Federal Rule of Civil Procedure Rule 23–"[a]ll that

7    need be shown by the plaintiff is that some identifiable factual or legal nexus binds together

8    the various claims of the class members in a way that hearing the claims together promotes

9    judicial efficiency and comports with the broad remedial policies underlying the FLSA."

10   Lewis, 669 F. Supp. 2d at 1127 (citing Wertheim v. Arizona, 1993 WL 603552 at *1 (D.

11   Ariz. 1993)).

12       Although courts occasionally skip the initial, notice stage determination, see, e.g.,

13   Basco v. Wal-Mart Stores, Inc., 2004 U.S. LEXIS 12441 at *15 (E.D. La. July 2, 2004),

14   courts in this Circuit overwhelmingly "refuse to depart from the notice stage analysis prior to

15   the close of discovery," see Kress, 263 F.R.D. at 629 (citing, among other cases, Labrie v.

16   UPS Supply Chain Solutions, Inc., 2009 WL 723599 at *3 (N.D. Cal. Mar. 18, 2009)

17   (Hamilton, J.)).

18       **B.      Motion to Dismiss**

19       A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the

20   complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Dismissal is

21   proper where a cause of action fails to state a claim upon which relief can be granted. Fed.

22   R. Civ. P. 12(b)(6). The Rule calls for sufficient factual matter to "state a claim to relief that

23   is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp.

24   v. Twombly, 550 U.S. 544, 555 (2007)). On a motion to dismiss, all well-pleaded allegations

25   of material fact are taken as true and construed in the light most favorable to the non-moving

26   party. Wyler-Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998).

27   A complaint should not be dismissed without leave to amend unless it is clear that the claims

28

5

**United States District Court**
For the Northern District of California

1  could not be saved by amendment.  <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 760 (9th Cir.

2  2007).

3      **C.**    **Motion to Strike**

4      A party must "affirmatively state any avoidance or affirmative defense."  Fed. R. Civ.

5  P. 8(c).  "Affirmative defenses plead matters extraneous to the plaintiff's prima facie case,

6  which deny the plaintiff's right to recover, even if the allegations of the complaint are true."

7  <u>FDIC v. Main Hurdman</u>, 655 F. Supp. 259, 262 (E.D. Cal. 1987) (citing <u>Gomez v. Toledo</u>,

8  446 U.S. 635, 640-41 (1980)).  In contrast, a defense that alleges that plaintiff has not met its

9  burden of proof is not an affirmative defense.  <u>Zivkovic v. S. Cal. Edison Co.</u>, 302 F.3d 1080,

10  1088 (9th Cir. 2002).

11      Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an

12  insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  A

13  ruling on a motion to strike affirmative defenses must be based on matters contained in the

14  pleadings.  <u>See</u> <u>Kelly v. Kosuga</u>, 358 U.S. 516, 516 (1959).

15      A defense may be insufficient as a matter of law or as a matter of pleading.  <u>Sec.</u>

16  <u>People, Inc. v. Classic Woodworking, LLC</u>, No. C-04-3133, 2005 WL 645592, at *2 (N.D.

17  Cal. Mar. 4, 2005).  As a matter of law, an affirmative defense is insufficient where "there

18  are no questions of fact, that any questions of law are clear and not in dispute, and that under

19  no set of circumstances could the defense succeed."  <u>Ganley v. Cnty. of San Mateo</u>, No.

20  C06-3923 TEH, 2007 WL 902551, at *1 (N.D. Cal. Mar. 22, 2007).

21      As a matter of pleading, the Ninth Circuit has long held that "[t]he key to determining

22  the sufficiency of . . . an affirmative defense is whether it gives plaintiff fair notice of the

23  defense."  <u>Wyshak v. City Nat'l Bank</u>, 607 F.2d 824, 827 (9th Cir. 1979).  While the Ninth

24  Circuit has not directly addressed the issue, most district courts in this circuit agree that the

25  heightened pleading standard of <u>Twombly</u> and <u>Iqbal</u>, which followed <u>Wyshak</u>, is now the

26  correct standard to apply to affirmative defenses.  <u>See, e.g.</u>, <u>Powertech Tech., Inc. v. Tessera,</u>

27  <u>Inc.</u>, No. C 10-945 CW, 2012 WL 1746848, at *4-5 (N.D. Cal. May 16, 2012); <u>Perez v.</u>

28

6

1   Gordon & Wong Law Group, P.C., No. 11-CV-03323-LHK, 2012 WL 1029425, at *6-8

2   (N.D. Cal. Mar. 26, 2012) (collecting cases).

3        The Wyshak opinion relied on Conley v. Gibson, 355 U.S. 41 (1957) in formulating

4   the "fair notice" rule, and Twombly and Iqbal effectively abrogated Conley. See Powertech

5   Tech., Inc., 2012 WL 1746848, at *5 (citing Perez, 2012 WL 1029425, at *6).  Also, the

6   underlying rationale of Twombly—to give fair notice to the opposing party—is equally

7   applicable to affirmative defenses, "given the purpose of Rule 8(b)'s requirements for

8   defenses."  Barnes & Noble, Inc. v. LSI Corp., 849 F. Supp. 2d 925, 929 (N.D. Cal. 2012).

9   Applying the heightened pleading standard to affirmative defenses "will also serve to weed

10  out the boilerplate listing of affirmative defenses which is commonplace in most defendants'

11  pleadings where many of the defenses alleged are irrelevant to the claims asserted."  Id.

12       Accordingly, Defendant's affirmative defenses must contain sufficient factual matter

13  to state a defense that is "plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

14  (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

15       A court may also strike a matter in an answer that is immaterial or impertinent.  Fed.

16  R. Civ. P. 12(f).  Immaterial matter is "that which has no essential or important relationship

17  to the claim for relief or the defenses being pleaded."  Fantasy, Inc. v. Fogerty, 984 F.2d

18  1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994).  Impertinent matter

19  does not pertain, and is not necessary, to the issues in question.  Id.

20       Where a court strikes an affirmative defense, leave to amend should be freely given so

21  long as there is no prejudice to the moving party.  Wyshak, 607 F.2d at 826.

22  **III.   DISCUSSION**

23       **A.    Collective Action Certification[5]**

24       Ghilotti presents four arguments in opposition to the motion for conditional

25  certification: (1) Plaintiffs have not met their burden of showing the existence of a single

26

27       [5]Ghilotti submitted a separate, 12-page list of evidentiary objections to Plaintiffs' declarations
    submitted in support of their motion.  See dkt. 42.  Local Rule 7-3(a) requires that such objections "be
28  contained in the brief or memorandum" submitted in opposition to the motion.  The Court accordingly
    STRIKES Ghilotti's separately-filed objections and does not consider them in ruling on these motions.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   decision, policy or plan tying together the collective; and, even if they have, (2) the statute of

2   limitations should be set at two years because Plaintiffs have not shown willfulness; (3) a

3   third-party administrator should be appointed to protect the privacy rights of putative

4   collective members; and (4) the Proposed Notice is prejudicial and should be amended.

5                       **1.      A Single Decision, Policy, or Plan**

6         Ghilotti argues that it has procedures in place to ensure that employees are paid for all

7   time worked; in essence, the company blames the employees for not requesting that they be

8   paid for the time at issue.  Employees receive a weekly report summarizing their hours

9   worked, and that report includes a section where employees can note errors and specify

10  additional time actually worked.  Taylor Decl. (dkt. 40) Ex. B.  Ghilotti says that the named

11  plaintiffs testified at their depositions that they knew about those forms, that they understood

12  they could submit claims for additional time, and that no one ever told them that they could

13  not submit such a form for driving and loading duties.

14        Indeed, Ghilotti says that Plaintiffs admitted during their depositions to being

15  compensated, at least on some occasions, for transport and loading duties.  See Ramirez

16  Depo., Ruda Decl. (dkt. 41) Ex. B at 112-13 (stating that he was paid for travel time on one

17  occasion); Ortega Depo., Ruda Decl. (dkt. 41) Ex. C at 132-33 (stating that supervisor let

18  him leave early to return truck to yard "five to ten times" between 2008 and 2011).

19        Ghilotti also says that the company's relevant decision-making is decentralized and

20  placed largely in the hands the twenty to thirty foreman who supervise each job site, such

21  that "no two job sites are alike, and no job description or set of rules universally applies to

22  any laborer's experience from one job site or one foreman to the next."  Cert. Opp'n at 4.  In

23  Ghilotti's view, the issue of uncompensated work is thus highly individualized and

24  unsuitable for collective adjudication.

25        Plaintiffs' burden at this stage is light, and they have met it.  Plaintiffs offer

26  substantial allegations and evidence that Ghilotti had a universal practice of requiring that

27  driving laborers perform loading and transport duties before and after their "official shifts"

28  without compensation.  In substance, the allegations here are equivalent to those in Escobar

**United States District Court**
For the Northern District of California

1   v. Whiteside Constr. Corp., No. 08-01120-WHA, 2008 WL 3915715 (N.D. Cal. Aug. 21,

2   2008), where the court held that conditional certification was warranted.

3        That individual supervisors deviated from that practice on rare occasions does not

4   mean that the practice did not exist or that conditional collective certification is

5   inappropriate.[6]  And employees might not use the payroll discrepancy forms to insist on

6   being paid for driving and transport duties for a variety of reasons, such as a fear of

7   retaliation, see Hodgkinson Decl. ¶¶ 11-13, or a universal understanding that such a request

8   would be futile, see Gomez Depo., Grunfeld Decl. (dkt. 45-1) Ex. B, at 93.[7]  Anyway,

9   Ghilotti was required to pay its employees for the time they worked regardless of how

10  insistently the employees complained about the company's failure to do so.

11        Accordingly, the Court GRANTS Plaintiffs' Motion for Conditional Collective

12  Certification.

13                **2.        Willfulness**

14        An FLSA violation is willful if the "employer either knew or showed reckless

15  disregard for the matter of whether its conduct was prohibited by the statute."  McLaughlin v.

16  Richland Shoe Co., 486 U.S. 128, 133 (1988).  In cases involving "willful" violations, the

17  normal two-year statute of limitations for FLSA violations is extended to three years.  See 29

18  U.S.C. § 255(a).

19        Where the issue of willfulness is disputed, district courts often conditionally certify

20  the three-year period upon a preliminary showing, and reserve final ruling on the issue until

21  later in the litigation.  E.g., Stuven v. Texas De Brazil (Tampa) Corp., No. 8:12-CV-1283-T-

22  24TGW, 2013 WL 610651, at *5-6 (M.D. Fla. Feb. 19, 2013); Francis v. A&E Stores, Inc.,

23  No. 06-Civ-1638-CLB-GAY, 2008 WL 258851, at *3 (S.D.N.Y. June 26, 2008).

24        Here, Plaintiffs have made an adequate threshold showing that Ghilotti management

25  knew that its employees were required to perform uncompensated work.  The company itself

26

27        [6]Ghilotti is free to revisit the issue on a motion for decertification should it develop evidence that
the deviations were more than isolated occurrences.

28

1   briefly experimented with a policy to provide some kind of compensation for driving duties,

2   which is consistent with the company itself recognizing the problem.  Also, Plaintiffs have

3   put forth some evidence that key management personnel knew about the practice but refused

4   to change it.  See Hodgkinson Decl. ¶ 12 ("[Ghilotti President] Mike Ghilotti was quite

5   candid about the fact that [Ghilotti] did not pay for Loading and Transport duties performed

6   by Laborers.  On more than one occasion, I heard him tell Laborers that if they didn't want to

7   get in a truck and load it, they should go somewhere else and he could get other workers to

8   take their place."); Dent Decl. ¶ 12 (stating that declarant overheard conversation where

9   employee noted to Mike Ghilotti that laborers were complaining about driving off-the-clock,

10  and asked if time clocks could be put in trucks, to which Mike Ghilotti responded "no, that's

11  not going to happen").

12          Accordingly, the Court conditionally certifies a collective covering a three-year

13  period.

14                  **3.      Use of a Third-Party Claims Administrator**

15          Plaintiffs are seeking the names, addresses, telephone numbers, and e-mail addresses

16  of potential Plaintiffs from 2009 to the present, and Ghilotti argues that the Court should

17  require that notice be disseminated by a third-party administrator "to protect the privacy

18  interests of those potential class members who do not wish to 'opt in.'" Cert. Opp'n at 10.  In

19  their view, third-party administrators "ensure the neutrality and integrity of the opt-in

20  process."

21          Ghilotti says that the cost of a third party administrator should be about $2,000;

22  Plaintiffs say that only accounts for one mailing and does not include costs required to

23  follow-up if the mailing generates no response.

24          Plaintiffs aver that they will use the contact information only for purposes of notifying

25  potential plaintiffs in this action, and will only resort to e-mail and telephone if a mailed

26  notice generates no response.

27          Both sides cite district court cases deciding whether a third party administrator is

28  desirable, with no discernible pattern underlying the decisions.  Requiring a third-party

**United States District Court**
For the Northern District of California

10

1    administrator here would drive up Plaintiffs' costs, and Ghilotti has offered no persuasive

2    reason to adopt a general presumption–nor any facts specific to this litigation suggesting–that

3    plaintiffs' counsel will violate their professional responsibilities.

4         Accordingly, the Court DENIES the request to require a third party claims

5    administrator.

6                    **4.       Specific Objections to the Proposed Notice**

7         Ghilotti proposes numerous changes, only three of which merit any discussion:

8    •       Change the "TO:" line by adding the underlined language: "Individuals
             employed <u>as Laborers</u> by Ghilotti Bros., Inc. . . . ."

9

10   •       Shortening the notice period from 90 days to 60 days

11   •       Adding a space on the opt-in form for the employee to provide the last four
             digits of the employee's social security number

12   <u>"TO:" Line</u>: Plaintiffs say that "Laborer" is a term of art under the Ghilotti Master

13   Labor Agreement, and the definition of the Loading and Transport Subclass is not limited to

14   Laborers.  Though it is not clear whether, as a practical matter, people employed in positions

15   other than "Laborer" would qualify as collective members, the proposed notice language

16   tracks the definition of the collective, and so the Court REJECTS Ghilotti's proposed change.

17        <u>Notice Period</u>: Another case from this district observed that "timeframes of sixty to

18   ninety days appear to have become the presumptive standard in this district." <u>Sanchez v.</u>

19   <u>Sephora USA, Inc.</u>, No. 11-03396-SBA, 2012 WL 2945733, at *6 (N.D. Cal. July 18, 2012).

20   Plaintiffs say that "employees covered by the collective action include individuals who are

21   not native English speakers and who may be more difficult to track down once they have

22   stopped working for the company," and so thirty additional days could make a difference in

23   response rates.  Cert. Reply at 12.  Ghilotti does not explain how a 30-day difference will

24   have any meaningful impact on the overall efficiency and cost of the litigation, and since

25   Plaintiffs have offered a reason it may result in more effective notice, the Court REJECTS

26   Ghilotti's proposed reduction of the opt-in period from 90 to 60 days.

27        <u>Social Security Numbers</u>: Finally, Ghilotti's request to require partial social security

28   numbers on the opt-in form runs contrary to its consistent position that this is a relative small,

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1 readily-identifiable group of employees.  Ghilotti has not offered any reason to believe that it

2 will be difficult to confirm that people responding to notices sent to names and addresses in

3 the company's records were, in fact, former employees.  Ghilotti's proposed change is

4 unnecessary therefore REJECTED.

5     Ghilotti's remaining proposed edits concern matters of subtle emphasis and style,

6 none of which the Court concludes are necessary. None of the challenged portions are

7 misleading or inaccurate in any material respect.  Accordingly, they are REJECTED.

8     **B.     Motion to Dismiss**

9     Ghilotti argues that (1) certain claims added in Plaintiffs' Second Amended Complaint

10 should not relate back to the filing of the original complaint under Federal Rule of Civil

11 Procedure 15(c); (2) certain other claims "must relate back only to the date of the specific

12 pre-lawsuit letters which gives the employer notice of the alleged violations"; and (3)

13 Plaintiffs' "request for IWC penalties under Labor Code § 558 must be dismissed as an

14 unlawful attempt at double recovery."

15     As a threshold matter, Plaintiffs argue that these are not proper bases for a motion to

16 dismiss because "Federal Rule of Civil Procedure 12(b)(6) cannot be used to challenge only

17 certain allegations within a cause of action."  MTD Opp'n at 2.  Plaintiffs say that Ghilotti is

18 "request[ing] that the Court determine the extent of [Ghilotti's] liability before Plaintiffs have

19 an opportunity to take discovery on the scope and time period of Defendant's violations."  Id.

20

21     In fact, however, these issues were ripe for decision under Rule 15 when Ghilotti

22 raised them in opposition to Plaintiffs' Motion for Leave to File the Second Amended

23 Complaint, see dkt 21; this Court deemed it prudent to defer ruling on them until Ghilotti

24 presented all of its legal arguments challenging the Second Amended Complaint, and the

25 Court stated in its Order that it would address them if brought again in connection with a

26 motion to dismiss, see Order (dkt. 25), which is precisely what Ghilotti has done.

27     No amount of discovery will inform or alter the outcome of any of the three issues

28 Ghilotti raises; they require decisions about abstract questions of law and the application of

**United States District Court**
For the Northern District of California

1  that law to the pleadings.  Resolving those issues now will clarify the scope of Ghilotti's

2  potential liability and move the litigation forward. The Court accordingly finds the issues

3  suitable and appropriate for resolution at this time, whether construed as a motion under

4  Rules 15, 12(b)(6), or 12(f).  Cf. Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th

5  Cir. 1983) ("[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and

6  money that must arise from litigating spurious issues by dispensing with those issues prior to

7  trial . . . .").

**1.      Relation Back of New "Waiting Time Penalties" Claims in the SAC**

9          Rule 15(c)(1)(B) provides that a new claim asserted in an amended pleading relates

10 back to the date of the original pleading when the new claim "arose out of the conduct,

11 transaction, or occurrence set out–or attempted to be set out–in the original pleading."  "The

12 policies underlying the statute of limitations are implicated" in the relation-back analysis, and

13 "amendment of a complaint is [thus] proper if the original pleading put the defendant on

14 notice of the 'particular transaction or set of facts' that the plaintiff believes to have caused

15 the complained of injury.'" Percy v. S.F. Gen. Hosp., 841 F.2d 975, 979 (9th Cir. 1988).

16         The test calls for the district court to "compare[] the original complaint with the

17 amended complaint and decide[] whether the claim to be added will likely be proved by the

18 'same kind of evidence' offered in support of the original pleading." Id.  "[T]he purpose of

19 Rule 15(c) is to defeat the bar of statutes of limitations, and is liberally applied especially if

20 no disadvantage will accrue to the opposing party." Rural Fire Protection Co. V. Hepp, 366

21 F.2d 355, 362 (9th Cir. 1966).

22         Ghilotti challenges Plaintiffs' addition in their Second Amended Complaint of  new

23 claims for "waiting time penalties" under California Labor Code § 203. See SAC ¶¶ 35, 36,

24 63, 70.  Plaintiffs' original complaint alleged that Ghilotti failed to provide proper meal and

25 rest breaks, failed to pay Plaintiffs minimum wages and overtime compensation owed, and

26 failed to furnish accurate wage statements. See generally Compl., dkt. 1-1.  The new claims

27 assert that Ghilotti had a practice of "effectively and involuntarily discharg[ing]" class

28 members during the rainy season by not giving them any shifts, SAC ¶ 35, and that the

1  practices alleged in the original complaint thus also violated California Labor Code sections

2  requiring prompt payment to employees of overtime and minimum-wage compensation due

3  to them upon discharge.  See id. ¶¶ 63, 70.

4      Ghilotti says the claims should not relate back because they arise from a "completely

5  new set of allegations" concerning seasonal staffing.  MTD at 6.  That overstates matters.

6  The claims in Plaintiffs' original complaint would be proven with evidence that Ghilotti did

7  not provide proper meal and rest breaks, and required uncompensated work.  The "waiting

8  time penalties" claims would be proven with "the same kind of evidence," but would only

9  apply to employees who were discharged at some point in the limitations period.  Ghilotti can

10  hardly claim surprise that some of its construction laborers were discharged over the multi-

11  year period at issue in this case.

12      One court facing a similar amendment concluded that a new waiting time penalties

13  claim should relate back since the "[d]efendant was put on notice that it would have to

14  defend against claims concerning its policies and practices with regard to overtime,

15  timekeeping, and rest breaks."  DeLodder v. Aerotek, Inc., No. CV-08-6044-CAS-AGRx,

16  2009 WL 1684409, at *5 (C.D. Cal. June 15, 2009)).  This Court reaches the same

17  conclusion.

### 2.      "Relation Back" of New PAGA Claims in the SAC

19      The parties next argue about whether Plaintiffs' newly added claims under

20  California's Private Attorneys General Act (PAGA), Cal. Labor Code § 2698, et seq., relate

21  back to the original pleading.  The statute of limitations on Plaintiffs' PAGA claims is one

22  year.  See Moreno v. Autozone, Inc., No. 05-04432-MJJ, 2007 WL 1650942, at *2 (N.D.

23  Cal. June 5, 2007).  PAGA itself provides that the statute of limitations is tolled while a

24  plaintiff exhausts his administrative remedies with California's Labor and Workforce

25  Development Agency (LWDA) prior to suit, which is required by the statute.  See Cal. Labor

26  Code § 2699.3(d).  Another provision in PAGA, California Labor Code § 2699.3(a)(C),

27  provides that "[n]otwithstanding any other provision of law, a plaintiff may as a matter of

28

United States District Court
For the Northern District of California

14

right amend an existing complaint to add a cause of action arising under this part at any time within 60 days of the time periods specified in this part."

Here, Plaintiffs' original complaint included allegations that Ghilotti failed to provide required rest and meal periods, and also failed to pay minimum and overtime wages owed to its employees. See Compl. (dkt. 1-1) ¶¶ 1-2. Plaintiffs first notified the LWDA of their rest break and minimum wage claims under PAGA in a June 2012 letter, and filed their original complaint on the same day bringing PAGA claims reflecting those theories. See Compl. (dkt. 1-1) ¶ 87; Grunfeld Decl. (dkt. 24-1) Ex. B. Later, in November 2012, Plaintiffs sent a second letter to the LWDA, this time notifying it of Plaintiffs' meal period and overtime claims under PAGA. The SAC added the PAGA claims identified in Plaintiffs' November 2012 LWDA letter.

In similar cases where plaintiffs have filed a complaint alleging all of the relevant facts and then later timely exhausted administrative remedies and amended the pleadings to include PAGA claims, courts have permitted the later PAGA claim to relate back to the filing of the original complaint, even where that complaint predated the filing of the administrative claim. See Martinez v. Antique & Salvage Liquidators, Inc., No. C09-00997-HRL, 2011 WL 500029, at *9-10 (N.D. Cal. Feb. 8, 2011); Waisbein v. UBS Fin. Servs. Inc., No. C-07-2328-MMC, 2008 WL 753896, at *1 (N.D. Cal. Mar. 19, 2008).

Ghilotti's argument that the claims should relate back only as far as the November 2012 LWDA letter rests on the premise that "PAGA claims do not accrue until statutory notice is provided." See MTD at 7. That is not the law. In fact, as explained in the case Ghilotti itself cites, PAGA's administrative exhaustion requirement is a precondition to suit, but it does not affect the date that a plaintiff's PAGA claim accrues. See Moreno, 2007 WL 1650942, at *4.

Ghilotti will suffer no unfair prejudice or surprise by confronting PAGA claims relating back to the original complaint, as that complaint alleged all of the relevant facts underlying the PAGA cause of action.

### 3. PAGA Penalty "Double Dipping"

15

1    Ghilotti insists that Plaintiffs' SAC requests penalties "under both PAGA and Labor

2  Code § 558 for each instance of a failure to comply with an overtime provision of an IWC

3  wage order," and that a recent California case precludes such "double dipping." See

4  Thurman v. Bayshore Transit Mgmt., Inc., 203 Cal. App. 4th 1112, 1132-33 (Ct. App. 2012).

5    Plaintiffs say the SAC requests no such thing.  Rather, it seeks only California Labor

6  Code section 558 penalties under PAGA.  MTD Opp'n at 9.  And, Plaintiffs correctly note,

7  Thurman acknowledged the availability of section 558 civil penalties in a PAGA action.  See

8  203 Cal. App. 4th 1125-26, 1132-33. The Court's review of the SAC has identified no

9  specific request for PAGA penalties under both California Labor Code section 558 and an

10  IWC wage order.

11    Accordingly, Ghilotti's motion to dismiss is DENIED in its entirety.

12    **C.      Motion to Strike Affirmative Defenses**

13    Ghilotti's Answer to Plaintiffs' SAC asserts fifteen affirmative defenses. See dkt. 31

14  at 15-18.  Plaintiffs accurately characterize all fifteen as "brief legal conclusions, entirely

15  devoid of any factual allegations," and move to strike them.  Mot. Strike at 4.  Plaintiffs also

16  argue that many of the asserted defenses could not be saved by amendment, either because

17  they are not actually affirmative defenses, or because they fail as a matter of law based on the

18  facts alleged in the complaint.

19    Ghilotti's opposition rests on the premise that some pleading standard lower than

20  Twombly and Iqbal applies to affirmative defenses–a position this Court rejects for the

21  reasons set forth above.  See Part II.C.  And, Ghilotti has not responded at all to Plaintiffs'

22  detailed breakdown of which affirmative defenses could be saved by amendment, conceding

23  the issue.[8]

24

25    [8]See, e.g., Qureshi v. Countrywide Home Loans, Inc., No. 09–4198, 2010 WL 841669, at *6 n.2
    (N.D. Cal. Mar., 10.2010) (deeming plaintiff's failure to address, in opposition brief, claims challenged
26  in a motion to dismiss, an "abandonment of those claims") (citing Jenkins v. City of Riverside, 398 F.3d
    1093, 1095 n.4 (9th Cir. 2005)); Sportscare of America, P.C. v. Multiplan, Inc., No. 2:10–4414, 2011
27  WL 589955, at *1 (D.N.J. Feb. 10, 2011) ("In most circumstances, failure to respond in an opposition
    brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the
    uncontested issue."); Scott v. City of Phoenix, No. CV–09–0875–PHX–JAT, 2011 WL 3159166, at *10
28  (D. Ariz. Jul. 26, 2011) (failure to oppose statute of limitations argument constituted waiver); Foster v.
    City of Fresno, 392 F. Supp. 2d 1140, 1147 n.7 (E.D. Cal. 2005) ("At any rate, failure of a party to

**United States District Court**
For the Northern District of California

1    The Court accordingly GRANTS Plaintiffs' motion to strike all fifteen affirmative

2 defenses, and grants Ghilotti leave to amend only as to its eighth, ninth, and fourteenth

3 affirmative defenses.

4 **IV.    CONCLUSION**

5    For the foregoing reasons, the Court GRANTS Plaintiffs' Motion for Conditional

6 Collective Certification, DENIES Ghilotti's Motion to Dismiss, and GRANTS Plaintiffs'

7 Motion to Strike.  Regarding conditional certification, the Court ORDERS:

8    1.    Certification of a collective action of the Loading and Transport Subclass is

9 approved.  As described in the operative complaint, the conditionally certified collective

10 action class is comprised of:

11     All present and former non-exempt employees of Defendant who have worked
       at a construction site, yard, or loading area as a laborer at any time from four
12     years prior to the filing of this action, until the resolution of this action, whose
       work included the loading and unloading of Defendant's trucks and the
13     transport of necessary construction equipment to and from job sites prior to the
       start of their shifts and following the conclusion of their shifts.
14
Dkt. No. 27, ¶ 41.

15    2.    Within 10 days of this Order, Defendant shall provide to Plaintiffs the contact

16 information, including names, addresses, telephone numbers, and email addresses, if

17 available, for all members of Loading and Transport Subclass.  Defendants shall provide this

18 contact information for all laborers who have worked for Defendant at any time since June

19 2009 who are or were either on the company's "eligible driver" lists or who have driven a

20 truck to or from a job site for Defendant Ghilotti (the "List").  At a minimum, this list must

21 include any employee listed as driving a Ghilotti truck on any of Defendant's dispatch reports

22 from June 2009 to the present.

23    3.    If there is any dispute about the scope of the List, Defendant shall provide the

24 required contact information for all individuals for whom there is no dispute within 10 days

25 of this Order, and then the parties shall meet and confer to attempt to resolve any disputes

26

27 address a claim in an opposition to a motion for summary judgment may constitute a waiver of that
   claim."); In re Online DVD Rental Antitrust Litig., No. 09-2029 PJH, 2011 WL 5883772, at *12 (N.D.
28 Cal. Nov. 23, 2011) (absent unusual circumstances, failure to respond to argument on merits "viewed
   as grounds for waiver or concession of the argument").

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1  about the scope of the proposed List of potential class members. After any necessary meet

2  and confer, a complete list must be provided to Plaintiffs within 20 days of this Order. If

3  there remains a dispute about the List, the parties may return to Court through a motion with

4  time shortened from 35 to 14 days, with simultaneous briefing seven days before the hearing.

5        4.      Plaintiffs' proposed Notice of Court Certification is approved. Plaintiffs are

6  authorized to send the Notice in English and Spanish to all members of the certified

7  collective class. The Court also authorizes Plaintiffs to send a second notice, substantially

8  the same as the first, as a reminder forty-five days after the issuance of the first notice.

9        5.      In order to ensure that all potential class members are aware of their right to

10  join the collective action, within 30 days of this Order, Defendant shall also be required to

11  post the Notice in English and Spanish at each of Defendant's four yards on a piece of paper

12  at least 8.5 by 11 inches in a prominent location accessible to potential class members.

13        **IT IS SO ORDERED**.

14

15  Dated: April 25, 2013             CHARLES R. BREYER
                                UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

G:\CRBALL\2012\4590\order re 3 motions (final).frm       18